IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY A. BRANDENBURG,                     06-CV-1431-BR

       Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


**ALAN R. UNKELES**
1865 N.W. 169th Place No. 121
Beaverton, OR  97006
(503) 531-5370

       Attorney for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**MICHAEL McGAUGHAN**
Office of the General Counsel
**JOHANNA VANDERLEE**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-3858

       Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Jeffrey A. Brandenburg seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Brandenburg's protective application for Disability Insurance Benefits (DIB) and found him ineligible for Supplemental Security Income (SSI) payments. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and 1383(c).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed his most recent applications for DIB and SSI

on February 24, 2003. Tr. 98.[1] The applications were denied initially and on reconsideration. Tr. 27-28, 55. An Administrative Law Judge (ALJ) held a hearing on October 13, 2004. Tr. 62-69, 332-79. On October 22, 2004, the ALJ issued his initial decision in which he found Brandenburg is not disabled and, therefore, is not entitled to benefits. Tr. 32-40.

On March 3, 2005, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. Tr. 80-83. On remand, the ALJ held a second hearing on December 14, 2005. Tr. 87-93, 380-426. At both hearings, Brandenburg was represented by an attorney. Tr. 332, 382. Brandenburg testified at each hearing, as well as vocational experts (VE) Kathryn Heatherly and Jennifer Gaffney. Tr. 332-79, 380-426.

On January 27, 2006, the ALJ issued a decision in which he found Brandenburg is not disabled and, therefore, is not entitled to benefits. Tr. 18-25. That decision became the final decision of the Commissioner on August 11, 2006, when the Appeals Council denied Brandenburg's request for review. Tr. 6.

## BACKGROUND

Brandenburg was 45 at the time of his second hearing before the ALJ. Tr. 383. He is a high-school graduate. Tr. 126. His

---

[1] Citations to the official transcript of record filed by the Commissioner on February 21, 2007, are referred to as "Tr."

primary work experience is with retail grocery produce.
Tr. 121, 130-32, 141-48.

On March 28, 1985, Brandenburg was in a single-car motor-vehicle accident in which he suffered traumatic amputation of his right leg below the knee, left-arm fracture, shattered ankle, facial lacerations, and loss of teeth. Tr. 203. Brandenburg's right leg was surgically amputated above the knee, his left ankle was pinned, and his left forearm was repaired by plating the radius and bowing the ulna with bone grafts from the removed stump of his right leg. Tr. 203-05, 230.

Brandenburg worked full-time for 14 of the next 18 years while also raising four children. Tr. 141, 346-49. He quit working in March 2003 and filed for DIB and SSI alleging an onset date of March 28, 2003. Tr. 98, 335.

Brandenburg has been diagnosed with multiple musculo-skeletal impairments resulting from the trauma suffered in the accident. Brandenburg suffers from chronic pain in both hips and his left ankle, knee, wrist, and shoulder as a result of post-traumatic degenerative joint disease. Tr. 213, 230-35, 246-49. Progressive degenerative changes are likely in both of his hips; his lower spine; and his left ankle, knee, and wrist. Tr. 249. Further contributing to his pain, Brandenburg fractured his right hip in a motorcycle accident in 1993. Tr. 230-35, 246. His hip was surgically repaired with metal plating. Tr. 230-35.

Brandenburg suffers from a significant loss of range of motion in his left elbow with some joint effusion. Tr. 230-35. Due to "abnormal biomechanics and load bearing" resulting from his use of a prosthetic device and compensation for his lost limb, Brandenburg also suffers pain in both groins. Tr. 249, 267.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a

preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


**DISABILITY ANALYSIS**

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(i).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for the listed impairments known as Listings are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Soc. Sec. Ruling (SSR)

96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Stout*, 454 F.3d at 1052. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Brandenburg had not engaged in substantial gainful activity after his alleged onset date of March 28, 2003. Tr. 19.

At Step Two, the ALJ found Brandenburg's right leg amputation and degenerative joint disease are severe impairments. Tr. 22.

At Step Three, however, the ALJ found Brandenburg's impairments do not meet or equal the criteria of any of the Listing of Impairments that would entitle Brandenburg to benefits. Tr. 22. Specifically, the ALJ found the medical evidence in the record did not establish "that [Brandenburg] has the medical inability to use prosthesis or ambulate effectively" under Listing 1.05B. Tr. 22.

At Step Four, the ALJ found Brandenburg has the RFC to lift and carry 20 pounds occasionally; to lift and carry ten pounds frequently; to sit, to stand, or to walk for six hours of an eight-hour workday; to reach overhead with his left arm occasionally; to use his left hand for fine and gross manipulation occasionally; to climb, stoop, kneel, crouch, and crawl occasionally; and to perform unskilled and semi-skilled work. Tr. 23-24. Based on these findings and the testimony of the VE, the ALJ concluded Brandenburg cannot return to his past relevant skilled work, which requires a medium level of exertion. Tr. 24.

At Step Five, the ALJ found Brandenburg could perform jobs in the local and national economy such as cashier and ticket seller in spite of his physical limitations. Tr. 24.

Accordingly, the ALJ concluded Brandenburg is not disabled and, therefore, is not entitled to benefits. Tr. 24.

**DISCUSSION**

Brandenburg contends the ALJ erred by (1) failing to consider adequately whether Brandenburg's amputation met or equaled a Listed Impairment, (2) improperly finding Brandenburg's testimony not fully credible, and (3) failing to give sufficient reasons for the little weight given to the opinions of Brandenburg's treating physicians.

**I.   Listing Impairment 1.05B.**

As noted, the ALJ at Step Three must determine whether the claimant's impairments meet or equal one of the Listed Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also* 20 C.F.R. pt. 404, subpt. P, app. 1; *Lewis v. Apfel*, 236 F.3d 504, 512 (9th Cir. 2001).  If a claimant's impairments meet or equal Listed Impairments, the claimant is presumed to be disabled and the ALJ need not make findings at Steps Four or Five.  *Lewis*, 236 F.3d at 512.

Brandenburg contends his impairments meet the requirements of Listed Impairment 1.05B for amputation.  The Listing requires:

> "One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic to ambulate effectively, as

> defined in 1.00B(2)(b), which have lasted or
> are expected to last for at least 12 months."

20 C.F.R. pt. 404, subpt. P, app. 1, at 1.05B.  Effective and

ineffective ambulation are further defined as follows:

> Inability to ambulate effectively means an
> extreme limitation of the ability to walk;
> i.e., an impairment(s) that interferes very
> seriously with the individual's ability to
> independently initiate, sustain, or complete
> activities.  Ineffective ambulation is
> defined generally as having insufficient
> lower extremity functioning (see 1.00J) to
> permit independent ambulation without the use
> of a hand-held assistive device(s) that
> limits the functioning of both upper
> extremities.
>
> * * *
>
> To ambulate effectively, individuals must be
> capable of sustaining a reasonable walking
> pace over a sufficient distance to be able to
> carry out activities of daily living.  They
> must have the ability to travel without
> companion assistance to and from a place of
> employment or school.  Therefore, examples of
> ineffective ambulation include, but are not
> limited to, the inability to walk without the
> use of a walker, two crutches or two canes,
> the inability to walk a block at a reasonable
> pace on rough or uneven surfaces . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, at 1.00B(1) & (2).

**A.  ALJ's Decision.**

The ALJ determined Brandenburg's impairment does not meet or

equal Listing 1.05B.  As noted, the ALJ found the medical

evidence did not establish "that [Brandenburg] has the medical

inability to use prosthesis to ambulate effectively."  Tr. 22.

In support of his finding, the ALJ noted Brandenburg advised
Tatsuro Ogisu, M.D., that he "is able to stand and walk better
than sit."  Tr. 22.

The record reflects Dr. Ogisu conducted an orthopedic
examination of Brandenburg on August 20, 2003.  Tr. 246-49.
Dr. Ogisu concluded Brandenburg had "abnormal biomechanics" and
"the use of an assistive device might be considered when
traversing over rough terrain."  Tr. 249.  Brandenburg advised
Dr. Ogisu that he is only able to walk one-half block to one
block before stopping to rest.  Tr. 247.  Dr. Ogisu and
Brandenburg's treating physicians, Robert Wilson, M.D., and Sarah
Lampton, M.D., also noted Brandenburg used crutches and canes at
times to relieve the pain caused by his prosthesis.
Tr. 235, 247, 259.  In addition, Dr. Ogisu also noted in his
report that Brandenburg stated he "prefers standing to sitting"
because of the pain each position causes, but Dr. Ogisu does not
indicate Brandenburg reported a preference for walking.  Tr. 249.
Thus, neither Brandenburg's statements to Dr. Ogisu nor Dr.
Ogisu's report establish Brandenburg is able to ambulate
effectively on his prosthesis.

On this record, however, Brandenburg satisfies the first
element of Listed Impairment 1.05B:  One lower extremity has been
amputated above the tarsal region.  Tr. 203-05.

If a claimant cannot traverse one block of rough terrain at

a reasonable pace without the use of an assistive device, cannot
independently sustain or complete activities, or cannot ambulate
without the use of two crutches or canes, he cannot "ambulate
effectively" and, as a result, satisfies the second element of
Listing 1.05B. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, at
1.00B(1) & (2). Although the record consistently reflects
Brandenburg has some difficulty ambulating, it is inconclusive as
to whether Brandenburg is able to ambulate effectively as defined
in 20 C.F.R. part 404, subpart P, appendix 1, at 1.00B(1) & (2).
For example, the medical evidence does not include any direct
conclusions as to Brandenburg's ability to "walk a block at a
reasonable pace on rough or uneven surfaces." As noted,
Dr. Ogisu concluded Brandenburg "may" require an assistive device
on rough terrain. The record is otherwise silent as to
Brandenburg's ability to ambulate effectively.

When evaluating medical opinions relating to disability
determinations, the regulations require:

> If the evidence is consistent but we do not
> have sufficient evidence to decide whether
> you are disabled, or if after weighing the
> evidence we decide we cannot reach a
> conclusion about whether you are disabled, we
> will try to obtain additional evidence. . . .
> We will request additional existing records,
> recontact your treating sources or any other
> examining sources, ask you to undergo a
> consultative examination at our expense, or
> ask you or others for more information.

20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In addition, when

evaluating disability claims of claimants with amputations, "the individual's medical ability to use a prosthesis to ambulate effectively, as defined in 1.00B2b, should be evaluated." 20 C.F.R. pt. 404, subpt. P, app. 1, at 1.00J(3). To the extent the record is inconclusive, the ALJ has the burden of developing the record. *Massanari*, 270 F.3d at 841. Nevertheless, the ALJ in this case continued to Steps Four and Five instead of developing the record more fully as to Brandenburg's ability to ambulate effectively.

In addition, the ALJ's decision does not reflect that he properly considered the medical evidence in the record at Step Three as required when analyzing whether Brandenburg could ambulate effectively and whether his impairments meet or equal Listed Impairment 1.05B. *See Lewis*, 236 F.3d at 512. On this record, therefore, the Court finds the ALJ erred when he failed to do so and when he failed to further develop the record sufficiently to enable him to determine properly whether Brandenburg's impairments meet or equal the requirements of Listing 1.05B.

## II. Brandenburg's Credibility.

Brandenburg contends the ALJ erred by failing to provide clear and convincing reasons for finding Brandenburg's testimony not credible, to identify specifically the testimony he found not credible, and to weigh Brandenburg's pain testimony properly.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony: He must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407. The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1986).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if the ALJ provides clear and convincing reasons for doing so. *Lester*, 81 F.3d at 834. *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

**A.   ALJ's Decision.**

The ALJ found Brandenburg credible "only to the extent he does have medically determinable impairments that do cause

vocationally relevant limitations, but not to the extent [he] is completely disabled by them."  Tr. 22.

The ALJ found Brandenburg testified to having "debilitating pain and an inability to engage in almost any type of activity." Tr. 22.  This Court, however, does not find Brandenburg's testimony to be so absolute.  Brandenburg repeatedly indicated in his testimony that most activities cause him a great deal of pain.  He consistently testified at both hearings and reported to numerous physicians that sitting, standing, walking, lifting, carrying, typing, and sweeping are actions that cause him pain. Tr. 156-59, 230-35, 247, 261, 340-46, 390-404.  Brandenburg, however, indicated he had to do many of these activities even though they are painful because he is raising three sons. Tr. 156-59, 247, 340-46, 390-91, 400-01.  The letters sub-mitted by Brandenburg's son, Jason Brandenburg, corroborate Brandenburg's testimony as to his difficulty in performing many household activities.  Tr. 166-77, 197.  Although the ALJ found Jason Brandenburg's statements not credible because "there is no objective evidence to support [them] and such are only an account of the behaviors he has witness [*sic*] or are simply a reiteration of what he was told to state," the ALJ did not identify any evidence in the record to support a conclusion that Jason Brandenburg was "told to state" anything particular in his letters.  Tr. 23.

The Court finds Brandenburg satisfied the *Cotton* test by providing evidence of his medical impairments, including degenerative arthritis and above-the-knee amputation. The ALJ characterized those impairments as severe, and Brandenburg's treating physicians suggest his medical impairments could cause him considerable pain and limited mobility. Tr. 22, 234-35, 261, 267. Even Dr. Ogisu does not discount Brandenburg's pain symptoms. Tr. 246-49. Thus, because the ALJ does not find Brandenburg is malingering, the ALJ is required to give clear and convincing reasons for finding Brandenburg's testimony not credible.

The ALJ found there was not any evidence that Brandenburg's symptoms were worsening, and, therefore, Brandenburg was not justified in quitting work as a grocery produce manager. Tr. 22. Dr. Ogisu, however, determined Brandenburg would likely suffer further "degenerative changes at both hips, lower spine, left knee, left ankle and wrist" because of his "abnormal biomechanics" and additional post-traumatic changes. Tr. 249. Drs. Lampton and Wilson also indicated Brandenburg was losing his ability to compensate for his impairments as his condition worsened. Tr. 230-35, 267.

Nevertheless, the ALJ found the objective evidence did not support a finding that Brandenburg is unable to work due to his impairments and concluded "the more likely reason is that he is

taking care of his three children by himself and simply does not want to work full-time." Tr. 23. The ALJ does not provide any support for his conclusion as to Brandenburg's motive. In any event, Brandenburg need not provide objective evidence of his subjective symptoms as long as he satisfies the *Cotton* test. *See Cotton*, 799 F.2d at 1407 (9th Cir. 1986)("[I]t is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

The ALJ also points to Brandenburg's substance abuse as a basis for finding Brandenburg's pain testimony not credible and notes Brandenburg was "less than credible about [methamphetamine] usage during the initial hearing." Tr. 23. The ALJ, however, does not specifically identify the testimony that he found less than credible, and this Court cannot find any evidence in the record from the initial hearing to support the ALJ's assertion. As noted, general statements about a claimant's credibility do not constitute clear and convincing reasons to support a finding that a claimant is not credible. *Lester*, 81 F.3d at 834.

The ALJ also notes Brandenburg refused to consider alternatives to medical marijuana (*e.g.*, pain medication and treatment at a pain clinic) suggested by his physician Chin Song, M.D. Tr. 272, 278-79. A claimant's refusal to accept treatment

for alleged symptoms undermines his testimony that he cannot work as a result of his impairments and constitutes a clear and convincing reason to reject such testimony. *Smolen*, 80 F.3d at 1284. Here, however, Brandenburg did not refuse treatment for the pain that allegedly keeps him from working. Brandenburg accepted treatment with medical marijuana and pain medication for the pain resulting from his musculoskeletal injuries. Thus, his refusal to try alternatives suggested by Dr. Song is not a sufficient basis for finding his testimony not credible.

Accordingly, the Court finds the ALJ failed to provide clear and convincing reasons supported by the record for rejecting Brandenburg's testimony that he cannot engage in "almost any type of activity" without pain. Tr. 22.

**III. The Opinions of Brandenburg's Treating Physicians.**

When the record contains conflicting medical evidence, the ALJ is responsible for determining credibility and resolving the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ also must give specific, legitimate reasons for

rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with substantial evidence in the record. *Magallanes*, 881 F.2d at 751. When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Id*. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

### A. Brandenburg's Treating Physicians.

The ALJ gave little weight to the opinions of Drs. Wilson and Lampton, Brandenburg's treating physicians, and instead relied on the opinion of Dr. Ogisu, an examining physician. Based on Dr. Ogisu's opinion, the ALJ found Brandenburg's RFC is

sufficient to allow him to work full-time.  Tr. 19-24.

Brandenburg contends the ALJ did not properly weigh the opinions

of his treating physicians.  Brandenburg asserts the opinions of

his treating physicians support a finding that he is disabled,

and, as a result, he is entitled to benefits.

### 1.  **Dr. Wilson.**

Dr. Wilson has treated Brandenburg on an occasional

basis since 1985.  Tr. 230-31.  He also performed surgery on

Brandenburg after his accidents in 1985 and 1993.  Tr. 230-35.

Dr. Wilson determined Brandenburg, as a result of his

impairments, "is severely limited with function as it relates to

his amputation . . . as well as significant limitation of

movement in his left arm and forearm."  Tr. 234.  Dr. Wilson

concluded Brandenburg "is incapacitated in many arenas and

anything that would require any physical labor on a repetitive

basis would not be within his capability."  Tr. 234.  He also

noted he "would consider [Brandenburg] a candidate for permanent

disability" because of his significant musculoskeletal injuries.

Tr. 235.

### 2.  **Dr. Lampton**.

Dr. Lampton treated Brandenburg ten times from

January 2004 to April 2005 and cared for Brandenburg through his

recovery from stump-revision surgery in June 2004.  Tr. 259-70.

Dr. Lampton also treated Brandenburg for pain resulting from his

multiple musculoskeletal injuries and arthritis.  She noted Brandenburg is "failing to compensate as well for the injuries as he did in the past."  Tr. 267.  Dr. Lampton reported "it is unlikely [Brandenburg] can continue with heavy labor . . ., has significant pain with prolonged sitting, and may not tolerate a sedentary position, either."  Tr. 262.  She concluded "it would be reasonable for [Brandenburg] to consider part time work which would allow him to change positions frequently as needed."  Tr. 267.

**B.  ALJ's Decision.**

The ALJ found in Step Two that Brandenburg's amputation and degenerative joint disease are severe.  Nevertheless, the ALJ found in Step Five that Brandenburg had the RFC to perform full-time work in the local and national economy.  Tr. 23-25.  Thus, the ALJ determined Brandenburg is not disabled and, therefore, is not entitled to benefits.  Tr. 24-25.

The ALJ assigned little weight to the opinions of Drs. Wilson and Lampton, Brandenburg's treating physicians.  Tr. 20-22.  Their opinions, which indicate Brandenburg is unable to work full-time, are contradicted by Dr. Ogisu, an examining physician who saw Brandenburg on only one occasion and did not review any of his medical records except one letter from Dr. Wilson.  Tr. 246-49.  As noted, the ALJ may reject the findings of a treating physician who is contradicted by an

examining physician only if he articulates specific, legitimate reasons supported by substantial evidence in the record. *Barnhart*, 278 F.3d at 957.

The ALJ discredited Dr. Wilson's opinion because he found Dr. Wilson's conclusion regarding Brandenburg's inability to work was based on Brandenburg's subjective complaints rather than objective medical evidence. Tr. 20, n.2. The record, however, does not support the ALJ's finding. Dr. Wilson's reports reflect he based his opinion on Brandenburg's "significant musculoskeletal-injury picture," and Dr. Wilson noted he had performed surgeries on Brandenburg in 1985 and 1993. Tr. 235. After summarizing Brandenburg's multiple physical impairments and outlining his loss of mobility and function together with his related pain, Dr. Wilson reported Brandenburg suffers from arthritis and other post-traumatic changes arising from his accidents. Tr. 230-35. Dr. Wilson also noted his diagnoses are based on his clinical findings and x-rays. Tr. 234. He concluded Brandenburg is a candidate for "permanent disability." Tr. 235. In addition, Dr. Wilson reported Brandenburg's injuries have "caught up with him" and severely limit his ability to function. Tr. 234.

The ALJ also discredited Dr. Lampton's opinion and indicated her conclusion that Brandenburg can only work part-time "fails to delineate . . . what specifically would cause the claimant to

only be able to engage in part-time work." Tr. 22, n.5. Again,
however, the record does not support the ALJ's conclusion.
Dr. Lampton repeatedly treated Brandenburg and reviewed his
medical records, including the reports and notes of Drs. Wilson
and Ogisu. Tr. 259. On the basis of her treatment of
Brandenburg and evaluations of Brandenburg's medical records,
Dr. Lampton concluded he can only work part-time. Tr. 267. As
noted, both Drs. Ogisu and Lampton note Brandenburg's condition
is deteriorating, and Drs. Lampton and Wilson found Brandenburg
is not compensating for his impairments as well as he once did.
Tr. 230-35, 249, 267. Moreover, Dr. Lampton reached her
conclusions more than a year after Dr. Ogisu examined
Brandenburg. When "a claimant's condition is deteriorating,
the most recent medical report is the most probative." *Young v.
Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

The continuing relationship of the treating physicians with
Brandenburg make them "especially qualified to evaluate reports
from examining doctors, to integrate the medical information they
provide, and to form an overall conclusion as to functional
capacities and limitations, as well as to prescribe or approve
the overall course of treatment." *Lester v. Chater*, 81 F.3d 821,
833 (9th Cir. 2001). The ALJ, therefore, must "give weight not
only to the treating physician's clinical findings and
interpretation of test results, but also to his subjective

judgments." *Id*. at 832-33.

Here instead the ALJ gave great weight to the opinion of Dr. Ogisu, who was merely an examining physician. The ALJ concluded Brandenburg has the functional ability to work full-time based on Dr. Ogisu's opinion because, according to the ALJ, Dr. Ogisu's opinion "is based on objective findings obtained through an examination of the claimant." Tr. 21, n.3. The ALJ specifically pointed out that "Dr. Ogisu even noted the claimant reported he did not have significant limitations in standing and even preferred to stand." Tr. 21, n.3. As noted, however, Brandenburg's statement to Dr. Ogisu was in the context of Brandenburg indicating his preference for standing over sitting because he found sitting to be more painful. Tr. 247. In any event, Brandenburg's statement alone does not constitute a sufficient basis for rejecting the opinions of Brandenburg's treating physicians in favor of Dr. Ogisu's opinion. Indeed, as noted, even Dr. Ogisu reported Brandenburg would likely suffer further "degenerative changes at both hips, lower spine, left knee, left ankle and wrist" because of his "abnormal biomechanics" and additional post-traumatic changes. Tr. 249.

Based on this record, the Court finds the ALJ erred when he failed to provide legally sufficient reasons supported by the record for rejecting the opinions of Brandenburg's treating physicians in favor of Dr. Ogisu's opinion as an examining

physician.  When the ALJ does not provide a legally sufficient
basis for rejecting a treating physician's opinion, the Court may
credit that opinion as a matter of law.  *Id.* at 834.  The ALJ
relied only on Dr. Ogisu's opinion to formulate Brandenburg's
RFC, and only the functional limitations in Dr. Ogisu's opinion
were included in the ALJ's hypothetical to the VE.  Tr. 23-24.
Thus, Brandenburg's RFC as well as the VE's responses to the
ALJ's hypotheticals were based on incomplete limitations.
Tr. 368-78, 416-25.

A claimant's RFC is an evaluation of his "ability to do
sustained work-related physical and mental activities in a work
setting on a regular and continuing basis.  A 'regular and
continuing basis' means 8 hours a day, for 5 days a week, or an
equivalent schedule."  SSR 96-8p at *1.  In other words, the
Social Security Act does not require complete incapacity to be
disabled.  *Smolen*, 80 F.3d at 1284.  The assessment of a
claimant's RFC is at the heart of Steps Four and Five of the
sequential analysis engaged in by the ALJ when determining
whether a claimant can still work despite severe medical
impairments.  An improper evaluation of the claimant's ability to
perform specific work-related functions "could make the
difference between a finding of 'disabled' and 'not disabled.'"
SSR 96-8p at *4.

After crediting the opinions of Drs. Wilson and Lampton, the

Court finds the only reasonable conclusion is that Brandenburg cannot perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis within the meaning of SSR 96-8p.  Accordingly, the Court concludes Brandenburg is disabled and, therefore, is entitled to benefits.


## **REMAND**

The decision whether to remand for further proceedings or for the payment of benefits is a decision within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  This decision generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F.3d at 1178.  The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has credited the opinions of Drs. Wilson and Lampton, Brandenburg's treating physicians. As a result, the Court concluded Brandenburg is disabled because the medical evidence establishes he does not have the RFC to perform work on a regular and continuing basis. *See* SSR 96-8p. It is clear, therefore, under these circumstances that "the ALJ would be required to find the claimant disabled." *See Harman*, 211 F.3d at 1178. Accordingly, the Court, in the exercise of its discretion, remands this matter for the calculation and award of benefits.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 16th day of October, 2007.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge